UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THERMAPURE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>JUST RIGHT CLEANING & CONSTRUCTION, INC.,<br><br>    Defendant. | No. CV-11-0431-RHW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND CLAIMS AND INFRINGMENT CONDITIONS** |

Before the Court is Defendant's Motion for Partial Summary Judgment, ECF No. 15, and Plaintiff's Motion for Leave to Serve First Amended Disclosure of Asserted Claims and Infringement Contentions. ECF No. 63. Plaintiff brings this action alleging that Defendant's structural cleaning and sanitization method directly infringes U.S. Patent No. 6,327,812 (the "'812 Patent"). The Defendant now moves for partial summary judgment and an order of non-infringement, arguing that its method does not practice every limitation in the 812 Patent's claims.

The Court held a telephonic hearing in this matter on July 19, 2012. Plaintiff was represented by Sean Kneafsey, Shaun Swiger, and Chad Mitchell. Joel Ard and Janelle Milodragovich appeared on behalf of Defendant. At the hearing, the Court permitted the parties to file additional briefing on the issue of Claim No. 6's "predetermined temperature" limitation. This was in response to Defendant's argument that Claim No. 6 should be constructed to mean that the temperature of heated air must remain constant as it travels from the heat source and into the

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS * 1**

structure being sanitized. This argument appeared for the first time in Defendant's Reply brief. Plaintiff then requested supplemental briefing on the construction of this issue and filed a motion to amend the asserted claims and infringement contentions, to include Claim Nos. 4 and 8 of the '812 Patent. Defendant opposes this motion.

The Court then held another telephonic hearing in response to these additional issues on October 15, 2012. Plaintiff was again represented by Sean Kneafsey and Chad Mitchell and Defendant was represented by Joel Ard and Janelle Milodragovich. The Court then heard argument in an attempt to ascertain: 1) what is the correct construction of "predetermined temperature," the resolution of which will allow the Court to rule on the Defendant's pending summary judgment motion of non-infringement on Claim No. 6 of the '812 Patent, and 2) whether good cause existed to grant Plaintiff's motion to amend claims/contentions. Thus, the Court is fully informed, having reviewed all documents in support of, and in opposition to, each motion and enters the following Order.

## FACTUAL BACKGROUND

### A. The '812 Patent

Issued to the Plaintiff ThermaPure by the U.S. Patent and Trademark Office ("USPTO") in 2001, the '812 Patent describes a "method and kit of components for destroying organisms and toxins in from an enclosure such as a building." Swiger Decl. in Opp. to MSJ ["Swiger Decl."], Ex. 1 ["812 Patent"], at 7, ECF No. 36-1. Generally the process involves blowing clean air, which has been artificially heated, into the structure through installed vents. The heated air flows throughout the structure, raising its ambient temperature to levels lethal to fungi, bacteria, and toxic substances. The heated air is eventually filtered and vented away from the structure. At least two temperature-sensitive probes measure the structure's

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 2

internal temperature in real time, verifying that the structure attains the temperature necessary for sanitization. The patent contains seven independent claims and one dependent.

In its opposition papers, the Plaintiff alleges direct infringement of Claim No. 6 of the '812 Patent. The patent contains eight claims total. Claim No. 6, which is typical of all eight of the patent's claims, describes the method with the following limitations:

1) preparing said enclosed structure for exposure to a high temperature gas by removing or protecting all heat sensitive items;

2) disposing a plurality of temperature indicating probes at predetermined locations within said enclosed structure;

3) heating a gas to a predetermined temperature;

4) directing said heated gas into said enclosed structure in order to raise the temperature within said enclosed structure to said predetermined temperature;

5) monitoring the temperature detected from said probes in real time to ensure that all portions of said enclosed structure reach said predetermined temperature;

6) venting said heated gas from said enclosed structure; and

7) filtering said heated gas vented from said enclosed structure.

'812 Patent, at 12, ECF No. 36-1 (numericals added).

The method Claim No. 6 describes is very similar to one employed by Water Out, a corporation unaffiliated with the Plaintiff that licensed the Water Out method across the country. Water Out describes its method as "a drying and air exchange system" whereby clean air is heated, blown into and circulated throughout a structure, filtered, and then removed. Swiger Decl., Ex. 5, at 24, ECF No. 36-2. Water Out sells licensees trailers equipped with propane furnaces,

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 3

q:\rhw\acivil\2011\thermapure\sj order.docx

blowers, and filters.[1] It preprograms the furnace to 220 degrees Fahrenheit and instructs operators to "set [a] desired temperature," either relying on the default setting or adjusting it to ensure organisms are eradicated. *Id.*, Ex. 7 & 10, at 43 & 61, ECF No. 36-3. Water Out also provides licensees with data loggers that measure temperature, among other things, and tell them to install "two per job: one near the [air] supply and one near the return" to record all the environmental changes during the air exchanging process. *Id.*, Exs. 6 & 8, at 29 & 48, ECF No. 36-3. Licensees are advised to replace the trailer's filters after each job. *Id.*, Ex. 7, at 44, ECF No. 36-3.

### B. Plaintiff's Other Lawsuits Involving the '812 Patent

As the Court is aware, there are multiple litigations involving Plaintiff and defendant manufacturers of structural drying equipment across the country. Both parties reference these cases. First, In 2006, the Plaintiff brought suit against Water Out[2] in the Eastern District of Texas for patent infringement, and a jury found that Water Out's method contributed to its licensees' direct infringement of Claim No. 6 of the '812 Patent. Swiger Decl., Ex. 4, at 22, ECF No. 36-1; *ThermaPure v. Water Out Drying Corp.*, No. 06-CV-0453, ECF No. 157 (E.D. Tex. Dec. 11, 2009). The court made no findings on any of the patent's other seven claims. *Id.* The jury was unable to agree on a royalty figure, and before the court could hold a new damages trial, Water Out filed for bankruptcy protection. *Id.*

Second, in 2010, Plaintiff sued several manufacturers of drying equipment on direct infringement of Claim Nos. 4, 6, and 8 of the '812 Patent and additional

---

[1] It may be helpful to review the photos of these trailers to get an idea of the general set-up. *See* Perez Decl., Ex. 22, at 57-68, ECF No. 43.

[2] The Defendant in this case, Just Right Cleaning & Const., was a Water Out Licensee. Swiger Decl., Ex. 15, at 78, ECF No. 37.

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 4

claims relating to another patent in the Northern District of Illinois.[3] *See ThermaPure, Inc. v. Temp-Air, Inc., et. al.*, No. 10-CV-4724 (N.D. Ill.). Plaintiff then entered into consent judgments of non-infringement as to the '812 Patent with three of the ten defendants including Servpro, Jon-Don, and Dri-Eaz. *Id.* at ECF Nos. 255, 257, and 259. Most importantly, after a *Markman* hearing, Judge Lefkow issued a Ruling on Claim Construction dated July 3, 2012. *Id.* at Dkt. No. 266. In that Order, the court construed the term "predetermined temperature" to mean "a temperature selected in advance that is sufficient to kill substantially all of the targeted organisms[.]" *Id.* This ruling applied across Claims 4, 6, and 8 of the '812 Patent.

Third, defendant Temp-air in the Illinois action was transferred to the District of Minnesota. *See ThermaPure, Inc. v. Temp-Air, Inc.*, No. 11-CV-0030 (D. Minn.). On November 23, 2011, Plaintiff then entered into a consent judgment of non-infringement with that defendant as to the '812 Patent.

**C. Defendant's Method & Alleged Use of the Water Out Method**

The Defendant is in the business of repairing and restoring water-damage buildings. To do so it uses a method, which it characterizes as one that simply dries a structure rather than sanitizing it, that it argues is distinguishable from any the '812 Patent contains. Like the '812 Patent's methods, the Defendant's work involves coupling a large heater to a blower and forcing hot air through a building until it is dry. Ben Justesen Decl. ISO MSJ ["B. Justesen Decl."], at 2, ECF No. 17-1. Unlike the '812 Patent's methods, however, the Defendant contends that it does not set its heater at a predetermined temperature, does not use at least two temperature-sensitive probes to monitor the process, and does not fix temperature-sensitive probes in any predetermined location within the structure. *Id*. at 3.

---

[3] Refers to the '148 Patent, United States Patent No. 7,690,148 entitled "Method of Treating For Pests" issued to Plaintiff on April 6, 2010.

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 5

Instead, the Defendant blows air through the structure until the interior humidity falls below a certain threshold, as determined by moisture meters and, at times, one portable hygrometer (a device that calculates relative humidity from ambient temperature) that technicians carry around the building. *Id.*

The Plaintiff alleges that the Defendant simply employs the Water Out method. It produces invoices from Water Out that show the Defendant purchased several Water Out-branded trailers and data loggers. Swiger Decl., Exs., 13, 15 & 17, at 69, 75, & 89, ECF Nos. 36-3, 37. The Defendant also entered into a licensing agreement with Water Out to become the exclusive licensee in Spokane County. *Id.*, Ex. 15, at 78, ECF No. 37. Moreover, one of the Defendant's former employees testifies that he attended Water Out trainings, was instructed by the Defendant's president to adhere to Water Out procedures, and did so at hundreds of jobsites. Seth Justesen Decl. in Opp. MSJ ["S. Justesen Decl."], at 4, ECF No. 41.

The Defendant admits that it purchased the Water Out trailers, but it contends that it does not use the data loggers Water Out provided. B. Justesen Decl., at 2, ECF No. 17-1. It does not follow Water Out's instructions to place at least two of these data loggers at predetermined points within the structure, nor does it predetermine a temperature at which to set the furnace based on the substances festering in the building. *Id.*

**I.    Defendant's Motion for Partial Summary Judgment**

## STANDARDS

**A. Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates there are no genuine issues as to any material fact. FED. R. CIV. PRO. 56(c). The analysis in a patent case is no different than in any other. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994). The moving party must first inform the

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS * 6**

Court of the basis for its motion and of identifying the portions of the affidavits, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. If the moving party meets its initial burden, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). The Court resolves all conflicts in the testimony and evidence in favor of the nonmoving party.

### B. Infringement

Under the Patent Act, 35 U.S.C. § 271, liability for patent infringement may be imposed on any person who, without permission of the patentee, "makes, uses, offers to sell, or sells any patented invention . . . within the United States or imports into the United States any patented invention during the term of the patent therefore." The rights granted to the patentee are defined by the patent's claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).

A two-step process is used to determine whether an allegedly infringing method falls within the scope of the claims: first, the Court must determine, as a matter of law, the meaning of the particular claim or claims at issue; and second, it must consider whether the accused product infringes one or more of the properly construed claims. *Id.* at 384; *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). The second inquiry is a question of fact, although summary judgment of infringement or non-infringement may nonetheless be appropriate when no genuine dispute of material fact exists. *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004).

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 7

The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). This burden can be met by showing that the patent is infringed either literally or under the doctrine of equivalents. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004). Direct infringement of a method claim requires the alleged infringer to perform *each and every* step of the claim. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed. Cir. 2007). If the method does not meet even one of a claim's limitations, there is no infringement. *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005).

## DISCUSSION

Combining these standards makes clear that summary judgment is inappropriate if there are disputed facts from which a jury could find, after crediting the Plaintiff's evidence, that the Defendant performed every element of the '812 Patent's Claim No 6. The Defendant alleges that it does not practice three of them: (1) that it uses "a ***plurality*** of temperature indicating probes;" (2) that it places any temperature indicating probes at "***predetermined locations*** within said enclosed structure;" and (3) that it raises the "temperature within said enclosed structure to a ***predetermined temperature***." '812 Patent, at 12, ECF No. 36-1 (emphasis added).

### A.  Using a Plurality of Temperature Indicating Probes

The parties agree that plurality, as used in the '812 Patent, means at least two probes.[4] Based on this construction, the Defendant argues that it only ever employs one device that is capable of measuring temperature and thus does not meet the second limitation in Claim No. 6. It points to an affidavit by its president stating

---

[4] The Defendant's motion assumes that its moisture meters and hygrometer would fall within a construction of the term "probe." Def.'s Mem. ISO MSJ, at 11, ECF No. 16.

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 8

q:\rhw\acivil\2011\thermapure\sj order.docx

that he found Water Out's data loggers to be ineffective and eschewed them in favor of the hygrometer. Although both types of devices measure temperature, he contends that only one hygrometer is ever used on a job.

In opposition, the Plaintiff provides affidavit testimony from a former employee of the Defendant. He states that the Defendant did not give away the Water Out data loggers. Far from it, he testifies that the Defendant used Water Out data loggers at nearly all of the Defendant's jobsites in order to measure the temperature and humidity of the structure's interior. S. Justesen Decl., at 2-3, ECF No. 41. He recalls using two data loggers—a plurality—on hundreds of large jobs during his employment with the Defendant. *Id.* Moreover, Water Out's operating procedures, to which the employee says the Defendant adhered, instruct technicians to use at least two loggers. Swiger Decl., Ex. 7, at 43, ECF No. 36-3.

An issue of material fact exists about the number of probes the Defendant uses to measure temperature, and the Court cannot resolve practice of this limitation in favor of the Defendant.

### B. Setting Temperature Indicating Probes at Predetermined Locations

Next, the Defendant argues that its method fails to meet another subset of Claim No. 6's second limitation, because it does not attach temperature-measuring devices anywhere in a structure, much less at a predetermined location. The parties agree that "predetermined" in this context is unambiguous and should be accorded its ordinary meaning—established or decided in advance. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005). Its president testifies instead that technicians walk around the jobsite with a moisture meter or hygrometer, or both, and take measurements at various intervals in random locations. B. Justesen Decl., at 3-4, ECF No. 17-1; Larson Decl. ISO MSJ ["Larson Decl."], at 2, ECF No. 17-2. Conflicting with this testimony again is that of the Defendant's former employee, who states he would routinely attach the Water Out data loggers "in the

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 9

q:\rhw\acivil\2011\thermapure\sj order.docx

*designated locations* where they would remain until the drying was completed." S. Justesen Decl., at 2, ECF No. 41 (emphasis added). This is another factual dispute that prevents the Court from concluding on summary judgment that the Defendant does not practice this limitation.

### C.  Heating the Structure to a Predetermined Temperature

Defendant contends that it does not predetermine any temperature to which it heats the structure or sets its furnace, and therefore, does not practice Claim 6's third and fourth limitations. It argues this Court should construe "predetermined temperature" to mean the temperature at the heat source must remain uniform and equal to the temperature in the structure being dried/sanitized. *See* Def.'s Reply ISO MSJ, at 5, ECF No. 45 (arguing "the structure must reach the predetermined temperature to which the gas is heated."). Plaintiff argues that "predetermined temperature" means the temperature inside the structure where it is monitored, not at the heat source. As the Court has not held a *Markman* hearing, this term must be construed here for the first time in order to rule on Defendant's motion for partial summary judgment.

#### 1.  Claim Construction Standard

The Court construes the scope and meaning of disputed patent claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90 (1996). Words of a claim are "generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is the meaning the term would have to a person of ordinary skill in the art as of the effective filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Because the inquiry into the meaning of claim terms is an objective one, the court looks to publicly available sources to show what a person would have understood the claim language to mean. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 10

(Fed. Cir. 2004). Those sources include the claims, the specification, the prosecution history, and, if relevant, any extrinsic evidence. *Id.*

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582; *accord Phillips*, 415 F.3d at 1317. The specification acts as a dictionary when it expressly or implicitly defines terms used in the claims. *Vitronics*, 90 F.3d at 1582. In doing so, the patentee may define a claim term in a manner inconsistent with its ordinary meaning. *Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

Patent claims should ordinarily be construed to encompass the preferred embodiments described in the specification, for "[a] claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct.'" *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005). However, a court should not import limitations from the specification into the claims, *Phillips*, 415 F.3d at 1323, absent a specific reference in the claims themselves, *Reinshaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

### 2. Construction of Heating the Enclosed Structure to a "Predetermined temperature"

Defendant argues that Plaintiff's evidence shows that Defendant instructed its employees to set the supply thermostat inside the trailer to 215°F - 220°F, in order to achieve a desired temperature of 120°F - 125°F inside the structure to be dried. S. Justesen Decl., at 3, ECF No. 41. As the argument goes, Defendant does not "raise the temperature within said enclosed structure to said predetermined

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 11

q:\rhw\acivil\2011\thermapure\sj order.docx

temperature" and thereby does not practice limitations three and four of Claim No. 6.

In the alternative, Defendant argues that Plaintiff's proffered evidence as to the factory pre-set of the Water Out equipment also supports its argument of non-infringement. This argument assumes that the equipment operator does not set any temperature, in which case the result is the same -- "the air is heated to a high temperature, which is then used to heat the structure to a much lower temperature. Def.'s Reply ISO MSJ, at 8, ECF No. 45. Defendant argues that Water Out trailers are pre-programmed by the factory to a temperature of 250°F on the supply side, which results in a temperature inside the structure of 170°F on the return side. *See* Perez Decl., Ex. 10 at 54, ECF No. 43.

Plaintiff argues that "predetermined temperature" means the temperature inside the structure where it is monitored, not at the heat source. Plaintiff asks the Court to view the claim as it would by one skilled in the art of the invention. *Phillips*, 415 F.3d at 1313. Plaintiff also asserts that Claim No. 6 must be interpreted in a manner that permits the practice of the preferred embodiment, as described in the specification of the patent. *Vitronics*, 90 F.3d at 1582. Based on these elementary principles of claim construction, Plaintiff argues that Defendant's reading of the limitation violates the basic tenents of patent law. In support of this position, Plaintiff proffered the declarations of two persons "skilled on the art of the invention," inventor of the '812 Patent Dave Hedman and engineer Michael Geyer.

The Court recognizes that words of a claim are "generally given their ordinary and customary meaning." *Id*. This is the meaning the term would have to a person of ordinary skill in the art as of the effective filing date of the patent application. *Phillips*, 415 F.3d at 1313 (Fed. Cir. 2005). Because the inquiry into the meaning of claim terms is an objective one, the court looks to publicly

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 12

available sources to show what a person of ordinary skill in the art at the time of the invention would have understood the claim language to mean. *Id.*

Through this lens, the Court finds that "Predetermined Temperature" means "a temperature selected in advance *to be reached within the structure*." (emphasis added); *see also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (holding that same terms should be constructed consistently across patent claims). This definition refers to the heated air that is directed into a structure in order to raise the temperature inside the structure. This is supported by the claim, the specification, the prosecution history, and a reading that permits the preferred embodiment described in the specification.

First, in the field of thermal eradication, "predetermined temperature" refers to the temperature to be reached inside a structure, as that is where a predetermined temperature must be obtained to kill the organism or sanitize the building – which the Court notes includes mold. A person skilled in the art would understand the word "said" to be in reference to the temperature inside the structure and not at the heater. The term "said," as used in a patent, refers to a term in the patent that was previously introduced in the claim.

Second, the abstract of the patent and the summary of the invention support this reading. The abstract of the patent states that the purpose of the '812 Patent is to raise the temperature inside the enclosed structure to be sanitized to at least 120°F. Complaint, ECF No. 1 at 8. The summary of the invention buttresses this construction as well: "the object is to monitor the temperature level throughout the enclosure to assure all areas reach the predetermined effective temperature." *Id.* at 11.

Third, the prosecution history further illustrates that the purpose of the '812 Patent was to raise the temperature inside the enclosed structure to a lethal temperature by measuring the temperature in the structure by use of temperature

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 13

indicating probes. This prosecution history reveals "many types of organisms such as mold may exist within enclosed spaces inside a structure . . . and probing is necessary to ensure that such spaces are brought to the lethal temperature." *Id.*, Prosecution History – May 7, 2001, Geyer Decl., Ex. 24 at 35-36, ECF No. 59-1.

Finally, The Court finds that the construction of "predetermined temperature" described above, is a reasonable interpretation that would permit the preferred embodiment as described in the specification of the patent. As noted in a prior hearing, Defendant's reading of predetermination was, "[a]s a matter of physics . . . probably almost impossible[.]" Tr. Motion Hearing, July 19, 2012, ECF No. 62 at 4. Accordingly, as a matter of basic thermodynamics, one skilled in the art of the invention would understand that heated air would not maintain a constant temperature from the point of the heat source, through the ingress duct, and ultimately into the structure -- because the heated air would immediately lose temperature as it traveled away from the heater.

For these reasons, the Court adopts Plaintiff's contention that "predetermined temperature" as it relates to Claim No. 6, refers to the temperature inside the structure and not at the heat source.

Thus, a factual dispute exists on this issue and summary judgment is inappropriate. The Defendant's former employee testifies that the Defendant deliberately blows air through a furnace set to 220 degrees in an effort to reach a "desired" internal structural temperature of 120-125°F. S. Justsen Decl., at 2, ECF No. 41. Water Out's operating procedures, copies of which are posted inside the Defendant's trailers, instruct technicians to select a temperature for the furnace. Swiger Decl., Exs. 7 & 20, at 43 & 106, ECF No. 36-3, 38. A reasonable jury could find that this amounts to predetermination, and the Court cannot resolve these limitations in favor of the Defendant at this time.

///

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 14

q:\rhw\acivil\2011\thermapure\sj order.docx

# CONCLUSION

The Court denies Defendant's Motion for Partial Summary Judgment because factual disputes persist on all three of Claim No. 6 limitations at issue.

## II. Plaintiff's Motion to Amend Claims/Contentions

Plaintiff moves the Court pursuant to Local Patent Rule 124 to serve amended contentions. That rule allows amendment of infringement contentions only upon a showing of: (1) good cause and, (2) no prejudice to the non-moving party. LPR 124. Good cause would include a claim construction by the Court different from that proposed by the party seeking amendment[.] *Id.*

Plaintiff seeks to add Claim Nos. 4 and 8 in response to Defendant's proposed construction of Claim No. 6. Claim Nos. 4 and 8 differ from Claim No. 6 in that they do not reference "predetermined temperature" in regards to the enclosed structure. These claims focus on killing targeted organisms. Defendant objects, and claims that Plaintiff lacks good cause to amend under LPR 124. Defendant argues it does not target organisms and Plaintiff only proposes to add additional claims because of losses in its other pending cases.

# STANDARD

## Amendment of Asserted Claims and Infringement Contentions

Local Patent Rule 124 allows the parties to amend infringement and invalidity contentions "only by order of the Court upon a timely showing of good cause." LPR 124. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: "(a) claim construction order by the Court different from that proposed by the party seeking amendment; [and] (b) recent discovery of material, prior art despite earlier diligent search . . ." *Id.* The party seeking to amend its contentions bears the burden of establishing diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366–67 (Fed. Cir. 2006). A determination of whether good cause has

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 15

been established is within the sound discretion of the trial court. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1380 n.5 (Fed. Cir. 2005).

In contrast to the more liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q—Lity Computer Inc.,* 211 F.R.D. 360, 367 (N.D.Cal.2002) (citation omitted). This rule was "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro,* 467 F.3d at 1366 n. 12 (quoting *Nova Measuring Instruments Ltd. v. Manometries, Inc.,* 417 F.Supp.2d 1121, 1123 (N.D.Cal.2006)).

## DISCUSSION

A determination of whether good cause has been established is within the sound discretion of the trial court. *See MEMC Elec.,* 420 F.3d at 1380 n.5. The Court denies Plaintiff's motion to amend, finding lack of good cause, because the Court did not propose a claim construction different than that proposed by Plaintiff – it construed "Predetermined Temperature" in Plaintiff's favor.

### A.   Good Cause

Under Local Patent Rule 124, a showing of "good cause" includes amendment of claim contentions where the Court constructs the claim in a manner that is different from that proposed by the party seeking amendment. LPR 124(a). The Court denies Plaintiff's Motion, based on the plain language of the rule as the Court did not construe "predetermined temperature" in favor of the Defendant. Thus, adding Claim Nos. 4 and 8 is unnecessary. Moreover, this is in line with the "good cause" requirement that disallows infringement contentions from becoming moving targets throughout the lawsuit. *Integrated Circuit Sys., Inc. v. Realtek*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 16

q:\rhw\acivil\2011\thermapure\sj order.docx

### B. Prejudice

It is undisputed that Defendant will not suffer prejudice. Fact discovery cutoff is March 13, 2013, and no depositions have been taken in this case to date. *See* Joint Certificate, ECF No. 19. However, if the Court determines Plaintiff lacks good cause to amend, there is no need to proceed to the prejudice prong. *O2 Micro*, 467 F.3d at 1366–68 (Fed. Cir. 2006).

### CONCLUSION

Thus, The Court denies Plaintiff's motion to amend, finding lack of good cause, because the Court did not propose a claim construction different than that proposed by Plaintiff – it construed "Predetermined Temperature" in Plaintiff's favor.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Partial Summary Judgment, ECF No. 15, is **DENIED.**

2. Plaintiff's Motion for Leave to Serve First Amended Disclosure of Asserted Claims and Infringement Contentions. ECF No. 63, is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 7th day of November, 2012.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER DENYING DEF.'S MOT. FOR PARTIAL SUMM. J. AND DENYING PL.'S MOT. TO AMEND CLAIMS AND INFRINGEMENT CONDITIONS** * 17

q:\rhw\acivil\2011\thermapure\sj order.docx